IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIS JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | CIVIL ACTION NO.<br>1:25-cv-06549-TRJ |

**ORDER**

On December 5, 2025, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") filed a motion to compel arbitration and stay this litigation. (Doc. 8). Upon review and consideration, Defendant's motion to compel arbitration is **GRANTED**.

BACKGROUND

On January 31, 2020, Plaintiff entered into a Retail Installment Contract (the "Contract") with Atlanta Autos (the "Dealer") to finance his purchase of a 2016 Mercedes-Benz GLE. (Doc. 8-1 at ¶ 4). The Contract includes an arbitration provision. (Doc. 8-1 at 24). The provision states:

> By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action.

(*Id.*) More information about the arbitration agreement is included on the back of the Contract. (*Id.* at 25). The provision states:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or

> dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(*Id.*) The Contract was later assigned to Wells Fargo, and Wells Fargo provided financing for Plaintiff's purchase of the vehicle. (*Id.* at ¶ 5). Plaintiff made payments to Wells Fargo pursuant to the Contract. (*Id.* at ¶ 7).

On or about September 3, 2025, Wells Fargo started making autodialed calls and sending text messages to Plaintiff regarding an alleged debt. (Doc. 1-1 at ¶ 8). Plaintiff sent a cease-and-desist notice a week later, but Wells Fargo continued to call and text Plaintiff. (*Id.* at ¶¶ 11–12). On October 14, 2025, Plaintiff initiated this litigation in the Magistrate Court of Fulton County, asserting claims against Wells Fargo for:

- violations of the Telephone Consumer Protection Act;
- violations of the Georgia Fair Business Practices Act;
- violations of the Fair Debt Collection Practices Act;
- invasion of privacy;
- trespass to chattels;
- conversion;
- negligent hiring, training, and supervision;
- negligence *per se*;
- negligent infliction of emotional distress;

- intentional infliction of emotional distress;
- harassment in collection; and
- violations of the Georgia Do Not Call statute, O.C.G.A. § 46-5-27.

(*Id.* at ¶¶ 15–52). On November 17, 2025, Wells Fargo removed the action to this Court based on federal question jurisdiction. (Doc. 1). On December 5, 2025, Wells Fargo moved to compel arbitration and stay the case based on the Contract. (Doc. 8).

## LEGAL STANDARD

When a party moves to compel arbitration, Section 4 of the Federal Arbitration Act (the "FAA") "provides the governing procedure." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347 (11th Cir. 2025); 9 U.S.C. § 4. The FAA was designed "to place arbitration agreements upon the same footing as other contracts," and it "embodies a liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Indeed, "the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016).

In reviewing a motion to compel arbitration, the threshold question is whether an arbitration agreement exists. *Id.*; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). This inquiry is simply a matter of contract, and "[i]n the absence of an agreement to arbitrate, a court cannot compel the parties to [arbitrate]." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir.

2004) (citation modified). "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley*, 428 F.3d at 1368. Moreover, a motion to compel arbitration is typically treated like a motion for summary judgment, and courts may consider matters outside the pleadings. *Bazemore*, 827 F.3d at 1333. The moving party must first attach sufficient evidence to establish that the parties formed a written arbitration agreement. *Id.* Then, if the non-moving party "raises a genuine dispute of material fact as to contract formation, the court must hold a summary trial." *Lamonaco*, 141 F.4th at 1347 (citing 9 U.S.C. § 4). If, however, "the existence of the agreement is not genuinely disputed, the court must compel arbitration." *Id.*

## DISCUSSION

Each of Plaintiff's claims against Wells Fargo arise out of Wells Fargo's communications with him regarding his vehicle loan account, and Wells Fargo argues those claims are subject to a binding arbitration provision. (Doc. 8-1 at 2). Based on the plain language of the Contract between the parties, the Court agrees.

A court may conclude that parties entered an arbitration agreement and compel arbitration only if, after reviewing the evidence under the relevant state substantive law, "there is no genuine dispute as to any material fact" regarding the formation of such agreement. *Bazemore*, 827 F.3d at 1333 (citation modified); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Because "state law generally governs whether an enforceable contract or agreement to arbitrate exists," the Court applies Georgia law here. *Caley*, 428 F.3d at 1368. Under Georgia law, a

party assents to a contract when there is "a meeting of the minds . . . on the essential terms of the contract." *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015) (citation omitted).

Plaintiff admits that he entered into the Contract to finance his vehicle purchase. (Doc. 10-1 at 3). Plaintiff also admits that Wells Fargo provided financing for the purchase and accepted assignment of the Contract from the Dealer. (*Id.*) Plaintiff argues, however, that because he did not sign the explicit arbitration clause box, and Wells Fargo accepted the Contract as is, the arbitration clause "never became part of the agreement" and is unenforceable. (*Id.*) Although the specific arbitration provision is not signed, Plaintiff *did* sign the bottom of the Contract indicating that he "read both sides of th[e] [C]ontract, including the arbitration provision . . . before signing below." (Doc. 8-1 at 24). Plaintiff also confirmed that he "received a completely filled-in copy when [he] signed it." (*Id.*) The arbitration provision also specifically applies to "successors or assigns," like Wells Fargo. (Doc. 8-1 at 25).

Additionally, the arbitration provision includes all of Plaintiff's claims. "In analyzing the scope of an arbitration clause, [the Court] consider[s] how the factual allegations in the complaint match up with the causes of action asserted and measure[s] that against the language of the arbitration clause." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1220 n.13 (11th Cir. 2011) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626). Here, the arbitration provision is broad and provides that either party "may elect to resolve any dispute by neutral, binding arbitration

and not be a court action." (Doc. 8-1 at 24). It also states that "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this [a]rbitration [p]rovision, and the arbitrability of the claim or dispute) . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship" will be resolved by arbitration. (*Id.* at 25).

All of Plaintiff's claims relate to Wells Fargo's autodialed calls and texts to Plaintiff regarding his loan debt. (*See* Doc. 1-1 at ¶¶ 16, 20, 23–25, 28, 32, 35, 38, 41, 44, 47, 51). Plaintiff's alleged debt stemmed from his agreement with Wells Fargo to finance his vehicle. Consequently, his claims are all related to the Contract. Regardless, the Contract also provides that the arbitrator can resolve any dispute regarding the "arbitrability of the claim or dispute." (Doc. 8-1 at 25). Thus, to the extent the parties do not agree about whether the claims are subject to arbitration, the Contract explicitly provides for the arbitrator to decide that very issue.

Plaintiff relies[1] on *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016) for the proposition that his claims do not relate to or arise from the Contract. (Doc. 10-1 at 4–6, 8, 11–14). But *Bazemore* is unhelpful, primarily because it does not address the proposition for which it was cited by Plaintiff. In *Bazemore*, the defendant failed to prove the existence of an arbitration agreement at all. 827

[1] Plaintiff also relies on numerous hallucinated AI cases, although he represented to the Court that he independently reviewed his briefing for good law. (Doc. 10-1 at 18). This is unacceptable, and to the extent any issue remains for the Court to consider after the completion of arbitration, the Court will consider whether sanctions are appropriate.

F.3d at 1331 (finding the defendant "ha[d] presented no competent evidence that [plaintiff] entered into any relevant arbitration agreement"). Here, Plaintiff admits that he entered into the Contract containing the arbitration clause.

Plaintiff also cites *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011) for the same proposition, but *Doe* is equally unhelpful. (Doc. 10-1 at 13). In *Doe*, the arbitration provision at issue limited arbitrable claims to those relating to her employment. 657 F.3d at 1215. Doe brought tort claims regarding her sexual assault that did not relate in any way to her employment. *Id.* at 1219 ("The cruise line could have engaged in that tortious conduct even in the absence of any contractual or employment relationship with Doe."). Here, Plaintiff's claims all arise from Wells Fargo's communications about his vehicle loan, which is the subject of the Contract.

In any event, Wells Fargo introduced evidence of the Contract containing the arbitration provision, which Plaintiff admitted he signed. Once Wells Fargo adequately supported its motion with competent evidence of a contract between the parties, the burden shifted to Plaintiff to show that the Contract was invalid by coming forward with evidence showing a genuine dispute. *Bazemore*, 827 F.3d at 1329 ("[T]he party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate that denial" (citation omitted)). Plaintiff failed to carry his burden or present any evidence that his signature agreeing to the entire Contract did not include the arbitration provision. Because "courts must rigorously enforce arbitration agreements according to their terms," and Wells Fargo established that Plaintiff

agreed to and signed the Contract, the Court finds that a valid agreement exists between the parties, and the arbitration agreement must be enforced. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); (Doc. 8-1 at 19–25).

## CONCLUSION

For these reasons, Wells Fargo's Motion to Compel Arbitration and Stay Case (Doc. 8) is **GRANTED**. Plaintiff's Motion for Entry of an Evidence Preservation Order (Doc. 13) is **DENIED AS MOOT**. Plaintiff is **ORDERED** to submit his claims against Wells Fargo to arbitration. This action is **STAYED** pending arbitration. The Clerk is respectfully **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case for docket management purposes. The parties are **ORDERED** to file a stipulation of dismissal of this action within 14 days of the conclusion of arbitration.

SO ORDERED, this 26th day of August, 2026.

TIFFANY R. JOHNSON
United States District Judge